UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUBIN FAMILY IRREVOCABLE STOCK TRUST; ROBERT CHESS; RODNEY BABER; CORPORATE COMMUNICATIONS GROUP, INC.; and DAVID SOLOMON,

Plaintiffs,

- against -

BRAHMA FINANCE BVI, LTD. and HC INNOVATIONS, INC.,

Defendants.

---X

JUDGE BUCHWALD

09 CIV 8842

COMPLAINT

Jury Trial Demanded



RECEIVED OCT 19 2009 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiffs, Rubin Family Irrevocable Stock Trust; Robert Chess; Rodney Baber; Corporate Communications Group, Inc.; and David Solomon, by their attorneys, Kreisberg & Maitland, LLP, as and for their Complaint, allege as follows:

## NATURE OF ACTION

1. This is an action brought pursuant to §§10b and 13d of the Securities Exchange Act of 1934, and Delaware General Corporation Law §253 to enjoin defendant HC Innovations, Inc. from amending its Certificate of Incorporation pursuant to a Schedule 14-C Information Statement wrongfully filed with the Securities and Exchange Commission by HCI on the consent of defendant Brahma Finance BVI, Ltd.'s illegal vote of its shares in violation of Rule 13d. This action also seeks to enjoin Brahma from voting its share in violation of Rule 13d.

## THE PARTIES

2. The Rubin Family Irrevocable Stock Trust, by and through its trustees

Margery Rubin and Errol Rubin, is a stock trust duly organized and existing under the laws of the State of New York with an address at 18 Pine Tree Drive, Great Neck, New York.

3. Robert Chess is a citizen of the United States of America. He resides in the State of Florida.

4. Rodney Baber is a citizen of the United States of America. He resides in the State of Tennessee.

5. Corporate Communications Group, Inc. is a domestic corporation with a principal office at 445 Central Avenue, Suite 108, Cedarhurst, New York.

6. David Solomon is a citizen of the United States of America. He resides in the State of Texas.

7. Upon information and belief Brahma Finance BVI, Ltd. was and continues to be a foreign corporation transacting business within the State of New York.

8. Upon information and belief, HC Innovations Inc. is a foreign corporation transacting business within the State of New York and with a principal place of business in Connecticut.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the federal statutory claims by virtue of 28 U.S.C. §1331; and over the state law claims by virtue of diversity of citizenship, 28 U.S.C. §1332, and the doctrine of pendant jurisdiction.

10. The amount in controversy exceeds $75,000.

11. Venue is proper within this district because, upon information and belief, many of the facts that give rise to the claims herein took place within the Southern

District of New York. Venue is also proper in this district because of a provision in the Securities Amendment and Purchase Agreement dated as of December 23, 2008 that provides, in pertinent part:

> All questions concerning the construction, interpretation and validity of this Agreement shall be governed by and construed and enforced in accordance with the law of the State of New York, without giving effect to any choice or conflict of law provision or rule that would cause the application of the law of any jurisdiction other than the State of New York. The Company and its Subsidiaries hereby submit to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York and of any New York State court sitting in the Borough of Manhattan in New York City for purposes of all legal proceedings arising out of or relating to the Transaction Documents or the transactions contemplated thereby…[1]

## FACTUAL BACKGROUND

12. On or about August 4, 2009, defendants, Brahma Finance BVI, Ltd. ("Brahma") and the management and directors of HC Innovations, Inc. ("HCI"), initiated a scheme to effectively take HCI private by enabling Brahma to "buy" sixty percent control in a paper transaction that would first give Brahma ownership of sixty million shares of HCI at $0.01 per share for six hundred thousand dollars and then give Brahma a six hundred thousand dollar fee payable as sixty million shares, for Brahma's standby commitment to buy up to two hundred forty million more shares at $0.01 per share (or two million four hundred thousand dollars). This despite the fact that HCI stock was selling at $0.06 per share at the time. HCI's filings do not explain whether Brahma gets its initial money back or one hundred twenty million shares in this scheme, but, the plan coupled with warrants, will leave Brahma in total control for a pittance.

---

[1] See, Exhibit "A," at p. 45.

13. Plaintiffs will shortly file with this Court an amended Complaint, which will seek, *inter alia*, rescission of Brahma's August 4, 2009 acquisition of sixty million shares of HCI. Immediate equitable relief is required now, however, in order to preserve the status quo; and to enable plaintiffs to exercise their rights under Delaware law to further examine, consider, and vote on any amendment of their Charter, basic corporate democracy rights guaranteed by state law; yet here, avoided through an artifice in explicit, express, and deliberate violation of federal securities law and S.E.C. Rule 13D-1.

14. Brahma is a sophisticated investor and it and HCI were both represented by able securities lawyers when Brahma "bought" its sixty percent share in HCI for no money. Brahma's failure to file the mandatory Schedule 13D was done neither by error nor through inadvertence. Rather, it was an audacious and deliberate evasion of the law. Federal law required Brahma to file a Schedule 13D, thereby disclosing to the Commission and the public at large a statement of its intentions with respect to HCI and the law forbids Brahma from voting its stock until ten days after filing its mandatory Schedule 13D. Yet Brahma chose not to publicly declare its plan to effectively take the company private by a *nine hundred million* share dilution (this was done without so much as a fairness opinion, or a shareholder vote as to either Brahma's acquisition of sixty million shares or its planned manipulation of HCI to authorize nine hundred million new shares) and secure full control by completing its take-over.

### HCI'S CORPORATE OPERATIONS AND GROWTH PRIOR TO BRAHMA'S ACQUISITION OF A CONTROLLING OWNERSHIP INTEREST IN HCI

15. Founded in 2004, HCI is a Delaware holding company, which, through its subsidiaries, provides specialty care management products and services, identifying and

providing specialized care for small populations of medically unstable and frail people. Through its subsidiary Enhanced Care Initiatives, Inc. ("ECI"), HCI markets its proprietary specialty care management programs for the medically frail and other costly sub-populations to Health Maintenance Organizations ("HMOs"), Managed Care Organizations ("MCOs"), disease management companies, large physician groups, nursing/assisted living homes, and state Medicaid departments.

16. As of March 26, 2009, ECI had secured contracts to provide services to regional and national HMO/MCOs and other entities including Health Spring; AmeriGroup; Alere Medical, Inc.; Emblem Health, Inc.; and the Health Insurance Plan ("HIP") of New York.

17. HCI's net revenues have risen consistently and considerably, from $2,887,498 in fiscal year 2005 to $27,883,239 in fiscal year 2008.

18. In about July 2007, HCI sold $5 million of Common Stock to accredited investors at $3.00 per share. Shortly thereafter, it was introduced to Mr. Barham, a principal of Brahma, as a potential investor. One year later, Mr. Barham, Brahma, and HCI's board and management implemented a scheme to steal the company, which was doing nearly thirty million shares in annual revenue by then, for two million four hundred thousand dollars, to be invested by Brahma after all other shareholders had been wiped out.

## BRAHMA'S TAKE-OVER PLAN

19. The scheme worked like this: Brahma "bought" sixty million shares of HCI's common stock at $0.01 per share on August 4, 2009, an apparent investment of six

hundred thousand dollars.[2] Pursuant to a concurrent Standby Purchase Agreement executed the same day, however, Brahma was granted a six hundred thousand dollar standby commitment fee payable as sixty million shares of common stock at 0.01 per share, *the exact amount of its purchase price for its acquisition of the sixty million shares in HCI.*[3]

20. Thus, on information and belief, Brahma received sixty million shares of HCI, sixty percent control of a publicly held company with nearly thirty million dollars in annual revenues, for nothing but a promise to buy up total control later for next to nothing. And for this, HCI got to pay Brahma's legal and professional fees and costs, in addition to its own. So HCI's directors, officers, and attorneys actually paid Brahma and its principal, Nick Barham, for the privilege of giving Brahma sixty percent ownership and control of the company and wiping out the shareholders they were required to protect.

21. This windfall transaction triggered Brahma's obligation to file a Schedule 13D with the Commission pursuant to both 15 U.S.C. §78m(d)(1), and Rule 13D-1(a), which respectively provide, in pertinent part:

> (1) Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is registered pursuant to section 78l[4] of this title...is directly or indirectly the beneficial owner of more than 5 per centum of such class shall, within ten days after such acquisition, send to the issuer of the security at its principal executive office, by registered or certified mail, send to each exchange where the security is traded, and file with the Commission, a statement containing

---

[2] *See, Exhibit* "A," Stock Purchase Agreement

[3] *See, Exhibit* "B," Standby Purchase Agreement.

[4] 15 U.S.C. §78l sets forth the registration requirements for securities.

such of the following information, and such additional information, as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors -

    (A) the background, and identity, residence, and citizenship of, and the nature of such beneficial ownership by, such person and all other persons by whom or on whose behalf the purchases have been or are to be effected;

    (B) the source and amount of the funds or other consideration used or to be used in making the purchases, and if any part of the purchase price is represented or is to be represented by funds or other consideration borrowed or otherwise obtained for the purpose of acquiring, holding, or trading such security, a description of the transaction and the names of the parties thereto, except that where a source of funds is a loan made in the ordinary course of business by a bank, as defined in section 78c(a)(6) of this title, if the person filing such statement so requests, the name of the bank shall not be made available to the public;

    (C) if the purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure;

    (D) the number of shares of such security which are beneficially owned, and the number of shares concerning which there is a right to acquire, directly or indirectly, by (i) such person, and (ii) by each associate of such person, giving the background, identity, residence, and citizenship of each such associate; and

    (E) information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including but not limited to transfer of any of the securities, joint ventures, loan or option arrangements, puts or calls, guaranties of loans, guaranties

against loss or guaranties of profits, division of losses or profits, or the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, or understandings have been entered into, and giving the details thereof.

15 U.S.C. §78m(d)(1)

• • •

Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is specified in paragraph (i)[5] of this section, is directly or indirectly the beneficial owner of more than five percent of the class shall, within 10 days after the acquisition, file with the Commission, a statement containing the information required by Schedule 13D.

Rule 13D-1(a),

22. Once ensconced with sixty percent ownership, Brahma proceeded to illegally vote its shares to unlawfully amend HCI's Charter to allow a nine fold increase in common stock, from one hundred million to one billion shares. In their zeal to implement their plan, the defendants disregarded the mandate of 18 U.S.C. §78m(d)(1) and Rule 13D-1 of the General Rules and Regulations promulgated under the Securities Exchange Act of 1934 ("Rule 13D-1") and authorized the filing of a Schedule 14C—dispensing with a shareholders' meeting with proxy solicitation rules in effect, based solely on Brahma's unlawfully gifted and voted shares.

23. As set forth in the Standby Purchase Agreement and in a Form 8-K[6], filed on August 10, 2009, defendants' next and final step will be to float a rights offering for two hundred forty million shares at $0.01 per share.

---

[5] Rule 13d-1(i) provides, in relevant part: "For the purpose of this regulation, the term 'equity security' means any equity security of a class which is registered pursuant to section 12 of that Act…"

[6] See, Exhibit "C," Form 8-K.

24. Defendants have agreed to purchase all unsubscribed shares. Since no one else would invest further into this scheme, defendants will "invest" two million four hundred thousand dollars for two hundred forty million shares to complete their super-dilution of HCI's stock and their acquisition of virtually all of HCI for a fraction of its worth.

25. Left unchecked, Brahma will have "purchased" three hundred sixty million shares for two million four hundred thousand dollars, or $0.00666 per share, a price less than one tenth annual revenues.

## BY ENJOINING BRAHMA FROM VOTING ITS STOCK, AND HCI FROM AMENDING ITS CERTIFICATE OF INCOPORATION, THE COURT WILL SIMPLY PRESERVE THE STATUS QUO, ENABLING HCI'S SHAREHOLDERS TO BE HEARD

26. Defendants must not be allowed to benefit from their unlawful conduct. HCI should be enjoined from amending its Certificate of Incorporation as proposed by its Schedule 14C Information Statement and should be directed to affirmatively withdraw same. Brahma's vote to consent to the Schedule 14C Statement should be declared null and void and Brahma should be barred and enjoined from voting its shares unless and until it has complied with Rule 13D-1.

27. The relief sought herein simply preserves the status quo in effect before Brahma illegally voted its stock to consent to HCI's Schedule 14C Notice, and secures plaintiffs' rights, and the rights of all other HCI shareholders enfranchised under Delaware Law, based on their ownership interest in place as of August 3, 2009, the day before the scheme complained of herein was launched, to participate in a shareholders' meeting with proxy votes in effect, regarding the subject proposed amendment to HCI's Charter.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Violation Of §10b of the Securities Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder)

28. Plaintiffs re-allege and reassert each and every allegation contained in paragraphs 1 to 27 this complaint as if they were more fully set forth herein.

29. The scheme alleged herein constitutes a willful design and artifice to defraud the plaintiffs and deprive them of their ownership interest in HCI.

30. This wrongful and deliberate conduct constitutes a scheme or artifice to defraud the plaintiffs in violation of §10b of the Securities and Exchange Act and Rule 10b-5 promulgated thereunder.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violation Of §13d of the Securities Exchange Act of 1934)

31. Plaintiffs re-allege and reassert each and every allegation contained in paragraphs 1 to 30 this complaint as if they were more fully set forth herein.

32. The transactions contemplated by the Schedule 14C filed by HCI require the Company to increase the number of shares that it is authorized to issue.

33. On or about September 21, 2009, the company circulated the Schedule 14C to its shareholders.

34. In pertinent part, the Schedule 14C stated: "Stockholders owning a majority of the voting stock of HC Innovations, Inc. (the "Company"), have taken action by written consent, to become effective on or after the twentieth (20th) day after this information statement is sent to our stockholders, to approve an amendment to our Certificate of Incorporation, which amendment will increase the number of authorized shares of common stock, par value $0.001 per share ("Common Stock") from

100,000,000 to 1,000,000,000."

35. Accordingly, the shareholder's consent becomes effective on October 19, 2009, enabling HCI to file the proposed amendment at any time thereafter.

36. Once the proposed amendment is filed, HCI will be able to complete the transactions outlined in the Schedule 14C.

37. These transactions would completely dilute plaintiffs' ownership interest in the company and deprive them of any ability to manage the affairs of the company.

38. Plaintiffs have no remedy at law and will be irreparably harmed if the company is permitted to file the proposed amendment and complete the transactions outlined in the schedule 14C.

39. Brahma's consent to approve the proposed amendment violated Section 13d of the Securities and Exchange Act of 1934 and Rule 13D-1 promulgated thereunder.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Violation Of Delaware General Corporation Law §253)

40. Plaintiffs re-allege and reassert each and every allegation contained in paragraphs 1 to 39 this complaint as if they were more fully set forth herein.

41. The acts complained of were designed to and, if not enjoined will have the effect of diluting plaintiffs' ownership interest in HCI below ten percent so as to deprive them of their statutory right to object, solicit proxies, and vote on any proposed merger.

42. This deprivation of plaintiffs' rights under §253 of the Delaware General Corporation Law will work an irreparable injury.

**WHEREFORE**, plaintiffs respectfully requests that this Court enter an order enjoining defendants from amending HCI's Certificate of Incorporation, as proposed in HCI's Schedule 14C Information Statement filed with the Commission on September 21,

2009; to increase the number of HCI's authorized shares of common stock from one hundred million to one billion; and from voting or accepting the vote of any shares of Brahma to an August 4, 2009 transaction in violation of Rule 13D-1, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
October 18, 2009

                                  Kreisberg & Maitland, LLP
                                  *Attorneys For Plaintiffs*
                                  116 John Street, Suite 1120
                                  New York, New York 10038
                                  (212) 629-4970

By: /s/ Gary Maitland
        Gary Maitland (GM-8763)

/s/ Alan Roberts
Alan Roberts (AR 2514)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**RUBIN FAMILY IRREVOCABLE STOCK TRUST;**
**ROBERT CHESS: RODNEY BABER;**
**CORPORATE COMMUNICATIONS GROUP, INC.; And DAVID SOLOMON**

-against-                                                                                     Plaintiffs,

**BRAHMA FINANCE BVI, LTD. And HC INNOVATIONS, INC.,**                          Defendant.

## COMPLAINT

### KREISBERG & MAITLAND, LLP

*Attorneys for Defendant*

ATTORNEYS AT LAW
116 John Street, Suite 1120
New York, NY 10038

(212) 629-4970

Service of a copy of the within                                                                                     is hereby admitted.

Dated:

Attorney(s) for

☐ **PLEASE TAKE NOTICE**

☐  that the within is a (certified) true copy of a                                                                19
    entered in the office of the clerk of the within court on

**Notice of Entry**

    that an Order of which the within is a true copy will be presented for settlement to
the Hon. one of the judges of the within named Court,
**Notice of**        at
**Settlement**     on      19   , at      M.

Dated:

### KREISBERG & MAITLAND, LLP

*Attorneys for*

ATTORNEYS AT LAW
116 John Street, Suite 1120
New York, NY 10038
(212) 629-4970

To:

Attorney(s) for